The next case on the call of the docket is agenda number two, case number 123972, People of the State of Illinois v. William Coty. Ms. Gopi Kashyap, please proceed. Gopi Kashyap May it please the Court, I am Assistant Attorney General Gopi Kashyap on behalf of the people of the State of Illinois. This case demonstrates why it is necessary for this Court to clarify and reaffirm that there are different standards and different principles that apply to review of sentences under the Illinois Constitution, and that those standards depend on the nature of the sentence issued. So here, there are two different sentences that the appellate court completed. So one, the sentence that defendant received was a discretionary one. It was one that was imposed by the trial court within the statutory limits. The trial court had discretion to impose a lesser sentence, but it imposed the sentence that it imposed. And a proper challenge, as this Court has repeatedly stated, to this type of discretionary sentence, and as the special concurrence in Harris most recently emphasized, is to whether the sentence is manifestly disproportionate to the offense, and whether the trial court abused its discretion in imposing that manifestly disproportionate sentence. So that is the only analysis that is proper for the challenge the defendant makes to his discretionary sentence. And under that proper analysis, defendant's sentence is constitutional. The trial court here considered all of the evidence before it. It considered the defendant's intellectual disability, it considered his background, it considered the aggravating factors, it considered everything, and the record supports that. And the trial court concluded that this was the appropriate sentence. That is because defendant's crime was very serious, extremely serious. It was a criminal sexual assault of a six-year-old girl, and it occurred when he was 40. And it occurred after he had already been convicted of a criminal sexual assault of a nine-year-old girl. Defendant had already demonstrated that he was a recidivist offender. He had accumulated two convictions between the two sexual assaults, two felony convictions for serious offenses. This was not a person that showed any potential for rehabilitation. There was no evidence that he could be rehabilitated, and so the trial court determined that his sentence was proportionate. There's nothing unreasonable here about the trial court's determination. Excuse me, Sophie. Are there any standards for determining when a person with intellectual disabilities is not culpable for murder or any lesser offense? So there are standards for determining whether any offender has the capacity to commit an offense. And so an intellectually disabled offender, if the offender is sufficiently deficient in their mental abilities or intellectual capabilities, a psychologist might say that there are no standards for people with intellectual disabilities. As to whether they are culpable? Yes. They're always culpable. It's just a matter of how culpable they are for their offenses. And that might be based on the fact that they're intellectually disabled. But there's a distinction between having the capacity to commit a crime, and here a defendant was found to have the capacity to commit the crime. He was found fit before trial. And whether a person has the same culpability as an average adult offender. And we would concede that defendant's moral culpability is lessened by virtue of his intellectual disability. But retribution is not the only goal of punishment. And here, while his intellectual disability mitigated his culpability, it certainly didn't make it so that the state couldn't protect society from his recidivist offenses. And the fact that he continued to commit sex offenses against children. So ultimately, under the Illinois Constitution, for a discretionary sentence, the question is, at bottom, whether the sentence is manifestly disproportionate to the offense. And that is the standard this Court has always applied for discretionary sentences. And that is the standard that the Appellate Court should have applied and then ended its analysis on. After doing so, the Appellate Court nevertheless went on. To evaluate a mandatory sentence that was not before it. The Appellate Court had already vacated defendant's mandatory sentence. And allowed the trial court discretion to impose a sentence within the applicable range. And the Appellate Court then applied the cruel or degrading standard. This Court has said that the cruel or degrading standard applies when a defendant is challenging a minimum sentence that the legislature has prescribed. And so when the legislature has prescribed a mandatory minimum of a life or some other sentence, the Court will evaluate that under the cruel or degrading standard. So you concede that mandatory life sentence without possibility of parole is not an available sentence for a person who is adult, I should say, offenders with intellectual disabilities? We do not concede that, Your Honor. Mandatory life without parole is available as a sentence. And the legislature, under this Court's precedent, can require mandatory life for any adult offender. But are you only appealing that the de facto life sentence imposed on the defendant here? Or the mandatory? Where our position is that the Appellate Court should have stopped once it found that there was no abuse of discretion. When the Appellate Court went on to analyze a mandatory sentence that was no longer applicable to a defendant, it exceeded the bounds of the case. There is nothing more to decide if the Trial Court did not abuse its discretion because it was consistent with this Court's application of reviewing discretionary sentences. Now, to the extent the Appellate Court was correct in going forward and looking at defendants' 50-year sentence, saying that it was life, the Appellate Court went too far in saying that there's a categorical prohibition against mandatory life sentences for intellectually disabled offenders. Nothing in this Court's precedent supports that holding. That categorical holding that the Appellate Court made would only be made if there could be a successful facial challenge to the mandatory minimum sentence. But this Court has said, and the statutory scheme that applies here, that a facial challenge cannot be successful if the statute can apply to any set of circumstances. And certainly here, the statutory scheme that allows mandatory life for all adult offenders can apply to adult offenders, to any adult offender. And our position is that they – so the statute itself is infatuationally unconstitutional. Now, I'd like to – May I ask a – Go ahead. Go ahead. I wanted to know if Atkins or any other case defines intellectual disability. Atkins set forth a definition of intellectual disability or the characteristics of intellectual disability. Post-Atkins, it left for the states to determine what is or when a person is intellectually disabled. There are – I mean, post-Atkins, there have been some U.S. Supreme Court cases trying to define exactly, you know, when a person is intellectually disabled, whether the standards that states have developed to answer that question are adequate or not. Illinois no longer has capital punishment, and so we – I think we have a statute that's been on the books at the time, but it certainly hasn't really been applied because capital punishment was no longer the case in Illinois. So there are standards, but in Illinois, the legislature would have to make some standards for determining when an offender is intellectually disabled. Can I ask a little bit more abstract question? You began earlier by saying that people with mental and intellectual disabilities – I think that's what we were discussing is what that means – can be held responsible but have less, perhaps, culpability. What do those words mean? What's the difference between responsibility and culpability? Well, the way the U.S. Supreme Court at least has said is that for a juvenile, for example, they have an underdeveloped sense of responsibility, and so that they are less morally culpable for their crimes. So they're less blameworthy for their crimes because they have an underdeveloped sense of responsibility. So that's part of – So they can be held responsible. Yes, but because they have an underdeveloped – No, I think in this context, I think I'm sort of raising – we have all sorts of ideas about insanity, well-developed ideas about people with some types of mental illness and their relationship to the criminal justice system. But this is a – and generally, that's where issues about mental health get sorted out and fitness and insanity. Here, you're looking not at a guilty verdict but at sentencing. Why is that? Why do you think those two different ideas should be separated in terms of guilt and sentencing? Well, I don't know that they are separated because even at sentencing, courts need to make sure the person is fit before they sentence them. So there are, I think, cases out there where the court has said, if at some point during the process there's some indication that the person is not fit, then you can't sentence them because that would be consistent with saying they're not fit to stand trial or plead guilty or be sentenced, and that would change things. But where a person has mental deficits that do not mean that they are unfit, where they don't – I guess they're not so deficient that they are also unfit to be sentenced or tried, then the question is, how do those mental deficits, how does the intellectual disability reduce their moral culpability, and then what role does that play at sentencing? And under this court's established precedent, it's always something the trial courts have to consider. It is a factor that is important. But this court has also said that if some of the features of the intellectual disability are a lack of impulse control, and if they do have repeated offenses, then there is some indication that the person will be a danger to society forever. They are unlike juveniles in that they don't have an underdeveloped sense of responsibility. It is underdeveloped, but it won't change with time and ordinary development. And that is the critical distinction between the two sets of offenders. And so I think capacity plays some role, but it really is if you're found to be fit at sentencing, then we can sentence you. Can I ask one other question? In terms of the analysis we're supposed to be applying here, I understand that in Atkins, the Supreme Court, and also in Milligram and Roper, the United States Supreme Court looked at theological justifications for sentencing. And that appears to be the analysis through which we should be looking at these issues. And I notice in Atkins, the Supreme Court looked at two of these justifications, retribution and deterrence. And then later in Miller, there are four theological justifications for sentences. And the court now adds these other ideas of incapacitation and rehabilitation. Where do these ideas come from? If we're going to be using this as our structure to write an opinion, here are these four things we're going to look at, or is it two things we're going to look at. Where do these ideas come from? Well, I think that they stem from longstanding literature and discussion of what the goals of punishment are. In Atkins, the court focused on retribution and deterrence, because previously the court had explained that the only valid justifications for imposing capital punishment are retribution and deterrence. And so there are no other goals that could be furthered by a capital sentence, and that's what Atkins explained. So they were focused on those two goals. In Miller, or let's start with Graham or Roper, the court added, especially in Graham, incapacitation and rehabilitation, because the sentence at issue was life without parole. And so the question was, what goals are furthered by a life without parole sentence? And the two added goals that are furthered by life without parole are incapacitation, protecting society from dangerous individuals, future crimes, recidivist offenders, and so the need to incapacitate them. Or, relatedly, rehabilitation. If the person can be rehabilitated, then that is inconsistent with life imprisonment, because like our Constitution reflects, if you can restore a person to useful citizenship, then life without parole doesn't match that punishment or that goal of criminal sentences. And so where they derive from, Your Honor, I think it's from longstanding history of how we've thought about crimes and why we punish individuals, and those are the justifications that we've, over time, developed. And so because in Graham and Miller, the court was looking at life without parole, they also addressed incapacitation and rehabilitation, in addition to retribution and deterrence, and took a look at how mandatory life without parole, whether it was furthered or justified by those goals. Here, we think that while retribution and deterrence, like Atkins pointed out, while life without parole could be less justified based on those two goals, there certainly is a goal of incapacitation here, because unlike juveniles, there is no evidence that the intellectually disabled offender, at least in this case, could rehabilitate. And there also, just as a class, intellectually disabled offenders are not, because of their permanent mental deficits, do not share that great prospect for reform or greater prospect for reform that juveniles have. And that is, as Montgomery specifically said, that is the fundamental part of Miller and of the rule of Miller. I think Montgomery repeated it a few times, that it was the greater prospects for reform that did not justify life imprisonment, because putting a juvenile away forever is inconsistent with that reform, the greater prospect for reform. So whether the court analyzes it, so under the Eighth Amendment, the claim fails for the very reasons that I just articulated, but I'd like to just turn back quickly to the parole degrading standard and how it operates. This court has never really applied the Eighth Amendment analysis to the parole degrading standard, because they're supposed to be separate. This court has established standards for the parole degrading standard. It doesn't apply here, because there is no mandatory sentence, and any facial challenge fails for the reasons discussed. And I'd like to just emphasize that any individual offender can always raise an as-applied challenge to a mandatory minimum sentence under the parole degrading standard. It would be an as-applied challenge, and it would be based on the factual circumstances of the person's offense, characteristics, and other evidence. Defendant already obtained that relief. He already obtained relief under that very standard. And so Illinois already provides all the protections and looks at people on a case-by-case basis. And so here we think that the court should affirm, because the trial court did not abuse its discretion under the manifestly disproportionate standard and defendant's sentence is constitutional. I'd like to follow up on some questions asked by Chief Justice Burke. The State did not appeal from Codee I, which was an unpublished opinion holding the statute facially or unconstitutional as applied to that defendant. You did appeal the sentence. In this case, the sentencing was under a different section of the criminal code rather than the mandatory sentencing statute. So are we considering the effect of Codee I, an unpublished opinion, in this case? That opinion is the law of the case. We are not challenging the conclusions of that opinion. Defendant obtained relief from his mandatory sentence based on the appellate court's analysis. It was an unpublished decision. The State did not appeal it. The State went forward with a discretionary sentencing hearing. Defendant was given an opportunity to present his evidence and then he received a discretionary sentence. So we have an unpublished opinion saying the section of the statute is unconstitutional as applied only to this defendant but has no precedential value? Yes. But what we do have, just to follow up, is that the appellate court here effectively revisited the prior decision by saying that intellectually disabled offenders can never be sentenced to life imprisonment absent the Miller protections. So in effect, it went back and made a determination that mandatory life is unconstitutional. So our issue is making sure that if that is the inappropriate standard, the degrading standard doesn't apply here, that scheme is no longer applicable to defendant. And again, it is the discretionary sentence that is at issue here. And there is an established standard for evaluating that sentence. And under that standard, his sentence is constitutional. Thank you. Thank you, Ms. Kasha. Mr. Daniel Mellon, you may proceed. May it please the court. Counsel, my name is Daniel Mellon. I'm with the State Public Defender's Office. I represent William Cody, the appellee in this case. We all know that William Cody suffers from a severe, significant intellectual disability. He has an overall IQ somewhere in the 60 range. He has the cognitive ability of approximately a third grader. He relies on adults to take care of him in every single aspect of his life. He's easily exploited. He only has a very rudimentary understanding of the criminal justice system. He can't read. He can't write. He has to be reminded to bathe himself. He has to be reminded to take care of himself in every single aspect of his life. So initially, yes, he was sentenced to a mandatory life sentence. And the appellate court ruled in a Rule 23 order that that sentence was unconstitutional as applied to him. They struck that down. The state did not appeal that order. And he was subjected to what the appellate court said that the trial court now has discretion to impose a term of your sentence. No further explanation and no further instructions. So the case went back down and their new sentencing hearing was held and the trial court remanded. It was a different trial judge who ruled over his trial. Notably, the trial judge who initially ruled over his trial said a life sentence should not be given in this case. But he had no discretion. He had to give a mandatory term. So William Cody goes back down for a resentencing hearing. The post-conviction trial judge imposed a 50-year sentence. So what the appellate court held was under this court's precedent in Miller v. Alabama. Miller v. Alabama indeed implies to discretionary de facto life sentences. So the appellate court in this opinion determined that due to Cody's intellectual disability and all the attendant characteristics with it, he should be afforded the same protections as juveniles. He should. Basically under the standards of fairness and decency in Illinois, they have evolved. So our constitution requires that a trial court consider how an intellectually disabled offender is different before sentencing him to life in prison. So contrary to what the state asserts in this argument, this is not a categorical prohibition on sentencing. This is simply affording special protections to a class of offenders who are, it's already been determined under Atkins, must be treated differently when it comes to sentencing. Did the defendant present any additional evidence of his intellectual disability at the resentencing hearing? No, no new evidence was presented at the resentencing hearing. The trial judge indicated he reviewed the record of the trial, the record of all the fitness proceedings. And he indicated that he reviewed the Rule 23 order. A new PSI was ordered, but there was really no additions or nothing was done. You mentioned earlier the nature and extent of your client's disability. That was in the record, correct? Yes. And the trial judge indicated, the trial court indicated that it reviewed the record, or to assume that to be correct? Yes, the trial judge did indicate that he had reviewed the record, but when it actually proceeded to sentencing, the trial judge made no reference to Cody's intellectual disability. The resentencing hearing proceeded. The state's attorney indicated that the state's attorney had spoken to the child's mother before the sentencing hearing. The child's mother was not there, the victim wasn't there at the sentencing hearing. So the trial judge, before imposing the 50-year discretionary life sentence, made no reference to his intellectual disability. Really, all he referred to was the fact that the mother still considers this a serious offense, and that the mother is asking for a substantial sentence, and that this was his second offense. That's all he specifically emphasized before imposing the life sentence. One other question. Does the holding and buffer apply to an adult defendant? To what is a de facto life sentence? I mean, it's obviously a different class of offenders, but I think it would be a fair guidepost for what might be an appropriate term of the sentence that constitutes a de facto life sentence. But here, we know this is a de facto life sentence, so it's not so much that we're in a gray area, that there's an issue. There was never really an issue below, and I don't believe the state ever disputed that this is a de facto life sentence. Counselor, you indicated that there was evidence in the record specifically about Mr. Cody and his, earlier on, not in the resentencing, but earlier on, and his specific mental capacity and his capabilities. But you were asking for a broad rule. So a question I think that perhaps the Chief Justice was raising as well is, how do we define the group that you are looking at? Is it the group that is at a certain point of IQ? Is it Downs? Schizophrenia? Bipolarism? Depression? Do we have to look at the diagnosis in each case to decide this incredibly fine balance? What constitutes an intellectual disability, so someone falls into a certain class of offenders and must be treated differently? Counsel was correct. Post-Atkins, it's been litigated in the United States Supreme Court. I think the case is Hall versus Florida, where the United States Supreme Court said, you have to look to more than IQ. So I believe in that case, for example, Florida had a law that said, if you fall below the IQ of 70, then you can't be executed, you can't be subjected to capital punishment. And the United States Supreme Court said that's an unconstitutional way of determining when someone has an intellectual disability for purposes of sentencing. So there is no clear guidelines right now, or at least in Illinois, and here we know he has an intellectual disability, and I think that the best course would be, to what happened here, you can present experts as to what someone's capacity is, and whether or not they do suffer from an intellectual disability. So it would have to be a case-by-case decision? Yes, case-by-case to determine if an individual offender has an intellectual disability for purposes of sentencing. So we know here he was examined for purposes of fitness, and one expert said he was not fit for trial, another expert said he was. He was also examined for whether or not he could understand Miranda. Same results. But there's no dispute here that William Cody suffered from an intellectual disability. It's actually, in the record, it shows that he, compared to other people with intellectual disabilities, he's actually on the lower end of adaptive functioning. But also, we are, while the appellate court created a broader rule, and I think under Harris it would be considered a facial rule that says all intellectually disabled people get these protections at Miller, which we argue is a very reasonable rule. It's really not imposing much of a burden on trial courts. It's just constitutional safeguards just to make sure before we sentence someone to die in prison that, you know, just keep in mind that this person has an intellectual disability and has mitigated culpability for his offense. But we are also asking, we would ask this court just to, as applied to William Cody, we don't, if this court does not, this court refuses to offer a broader rule, at least William Cody, as applied to him, it violates the Constitution to subject him to a life sentence to die in prison without what the trial court did here, giving any sort of meaningful consideration to his intellectual disability. What do you mean by that? Do you mean by any sort of consideration of his intellectual disability? I think, based on my reading of the record, my review of the record, and the appellate court's review of the record, that while the trial judge, he didn't really have any guidance before he resentenced William Cody. What kind of guidance? As here are the specific factors you should be considering before you determine that William Cody should spend the rest of his life in prison. The appellate court listed a number of factors describing the unique characteristics that are attended to intellectual disability as were set forth in that case. So what the appellate court said is before you sentence someone, such as William Cody, to life in prison, as you do in juvenile cases, you must look at all these unique characteristics and give some meaningful consideration to them before you sentence someone to life in prison. But the trial judge here, he did not hold anything nearly close to what would be considered, for example, a Miller hearing, or now it's required by statute in juvenile cases, as this court described in Pullman. The trial judge here, as we just discussed, really gave no reference to his intellectual disability whatsoever. And the appellate court, we would ask this court to find, correctly found that that constituted a constitutional error. This would be a much broader holding than even Miller, because looking at juveniles, it's age. Okay, you're under the age of 21, you're under the age of 18. I think you've even admitted here today, or something that probably we all know, which is it's very difficult to define what is intellectual disability. So it would at least require some extensive expert testimony on is this person intellectually disabled, to what degree are they disabled, is there any possibility of rehabilitation, so forth, so on. Is that correct, or am I misunderstanding? Yes, that's correct. I don't know if it would be a much broader rule than Miller. We know that intellectually disabled people as a class are entitled to special protections under the 8th Amendment. And if there is, to the extent that there is some difficulty, or some differences in what it takes to determine whether or not someone is intellectually disabled, that should not, I don't believe, keep this court from holding that they're entitled to the protections of Miller, because those protections, and the fact that intellectually disabled people are entitled to special protections, predates Miller, predates Graham, predates Roper, it all started with Atkins. Atkins was the first case where the United States Supreme Court said certain classes of offenders, because of their diminished culpability, you can't impose certain penalties, and in that case that was the death penalty. To the extent that there is, it's a little bit more, it's not as simple as saying that person was born in this certain year, so they get protections under the 8th Amendment. I don't think that should stop this court from holding that they still get the protections, even once you do determine they're intellectually disabled. And here we know he is intellectually disabled. Culpability is not the only relevant factor under Miller. What about the comments about youthful immaturity, rehabilitative potential, possibly due to the developing brain? Is that not a distinction that should be applied to the intellectually disabled? I don't think that distinction is as significant or supported as the State of the Circus does. Yes, a person with an intellectual disability, it's probably lifelong, but that's different than whether or not they can learn or grow or rehabilitate themselves. We actually provide some research in our brief that shows, there may need to be certain programs tailored towards an intellectually disabled person, but it doesn't mean that they're incapable of learning or growing, and I think that's sort of unfair to say, as a class of people, intellectually disabled people can't grow. Plus, and granted, a juvenile maybe has some greater potential for rehabilitation and reform, just because they're going to grow up, but in Holman, this court enumerated the factors that are considered after a Miller hearing, and the potential for rehabilitation is just one of five factors listed there. In the statute, the legislature stated that the potential for rehabilitation is just one of many factors to be considered to determine whether or not a life sentence is warranted. This is after a Miller hearing, so to the extent that there's a difference in the potential for rehabilitation between a juvenile, I don't think that's enough to say they shouldn't get a Miller hearing in special constitutional protections to begin with. In this case, the judge made some reference to intellectual disability, perhaps not exactly in the context of when he opposed the sentence. Is it your position that recognizing that a person has intellectual disability is not enough without specifically going through each of the characteristics of what happens? Yes, and I think we can use the buffer for guidance where similarly, this court held that you can't just look to youth, that's not enough. You actually have to look to the attributes of youth and give them meaningful consideration before opposing a discretionary de facto life sentence. Courts have declined to extend the Miller line of cases to intellectually disabled adults, including the Massachusetts Supreme Court, correct? Yes, but we're also asking this court to interpret the Illinois Constitution. This court has never declined to extend Miller to intellectually disabled people under the Illinois Constitution. I would submit that not enough cases have come up to really, and not enough courts in the United States Supreme Court has ever considered this. As I know in the brief, it's probably incumbent on a person who cannot read or write to challenge their life sentences from state petitions, from prison, which is what happened here. So no court has extended it, but we submit that this should not stop this court from doing so under the Illinois Constitution. Of course, the Atkin case itself spoke about a national consensus on the issue. It sounds like there's not a national consensus on this issue. Correct, but we don't believe that that analysis applies here, because as Miller pointed out, when the United States Supreme Court really looks to a national consensus, it's when the court is categorically banning a penalty. That's what Atkins was doing. They were categorically banning, saying you can never execute a person with an intellectual disability. Whereas here, and I think that's one thing I would like to emphasize, is we are not saying a trial judge, a sentencing court, can never sentence an intellectually disabled person to a life sentence. There's going to be instances where it's an appropriate sentence. But all we're asking for is what Miller imposed is just some constitutional protections before you do impose a life sentence. You must consider how an intellectually disabled person is different before you do this. The national consensus does inform the issue and discussion, but it should not at all keep this court from holding Miller protections. Thank you. I'd like to pick up where Counsel left off, in that he's not asking for a rule that a court can never sentence an intellectually disabled offender to a life without parole. This is a categorical rule under the Eighth Amendment. Miller is a categorical rule under the Eighth Amendment. Montgomery said it is a categorical rule repeatedly. The substantive nature of the rule makes it a categorical prohibition. And the rule under Miller is that a juvenile offender whose crime reflects transient immaturity cannot be sentenced to life without parole. The appellate court here made that same determination, said an intellectually disabled offender whose crime does not reflect permanent incorrigibility cannot be sentenced to life without parole. I think I may have said it wrong originally, but the point is that a juvenile offender whose crime doesn't reflect permanent incorrigibility can't get life without parole. The appellate court said an intellectually disabled offender whose crime doesn't reflect permanent incorrigibility can't get life without parole. That is the holding of Montgomery. That is the holding of Miller. And so it is a categorical prohibition. But even if the court were to consider it like defendant asks, it is still a prohibition on a mandatory life sentence. And so this court should not extend that under the Eighth Amendment for the very reason that Justice Cormier stated, which is that juveniles will, by definition, change. Or most of them will. The vast majority of them will. That's what Miller says. We know that they will. With time and ordinary development, they will mature. And they will not be permanently incorrigible. We're looking at the class of defendants under the Eighth Amendment. And so the question is whether as a class we can make that same judgment about intellectually disabled offenders. And there simply is no evidence that we can make that judgment. And the Supreme Court precedent and this court's precedent, when it has addressed intellectually disabled offenders, has observed that the deficits are permanent. And absent some intervention, they will not change. We're not saying that any individual intellectually disabled offender can't make the case that their sentence, their life sentence, is disproportionate to their offense. Our Constitution provides them that avenue, and defendants obtain that relief. So for that reason, the court should reject the Eighth Amendment claim. I want to go back to Justice Tice and Justice Farman's questions about how this would all operate. And what the appellate court has done is actually, unlike for juveniles, where it's kind of a one-step process, are you under 18? And then are you transiently immature or permanently incorrigible? For an intellectually disabled offender, it's actually a two-step process. One, do you fall within the class of intellectually disabled offenders? And that requires a hearing akin to what happens in capital cases. You apply the standards and determine whether a particular person is intellectually disabled. And once you've made that decision that they are intellectually disabled, you nevertheless have to look at the second step, which is, are they intellectually disabled and permanently incorrigible? Because if they are not permanently incorrigible, then under the Eighth Amendment rule that the appellate court created, then life without parole would be inoperable. So there is more to be done in a case if the opinions were extended, as the appellate court did. I want to then turn to this particular case, and to say that the defendant had every opportunity to present more evidence, and he didn't. And that very well might be because, as his doctor pointed out, this condition was a lifelong condition. It was one that wasn't going to change. In the record, his doctor says that he's unlikely to learn from his mistakes, or it's becoming more difficult for him to do so. Everyone agreed that he had a mild intellectual disability. Yes, there are adaptive deficits, but he was capable of some learning. But ultimately, the experts concluded this wasn't going to change. And that was based on reports from 1988 and 1998 and 2004. So he had been repeatedly evaluated, and they all came to the same conclusion. And so this isn't a case where the defendant was going to change. And that supports the trial court's ultimate decision, that due to his prior offenses, and due to the need to protect society, his sentence is constitutional. So one more point is that under the 8th Amendment analysis, defense counsel stated that Miller's line of cases started with Perkins. That's simply not true. The categorical bars began with Thompson, at least for children. It was in Thompson v. Oklahoma that the U.S. Supreme Court said that children under 16 could not get capital punishment. And from there, it evolved to the intellectually disabled and then to under 18. And as this court said in Harris, that is the line, that is the stopping point. And the defendant and the appellate court are extending that to an adult defender. And the U.S. Supreme Court hasn't done so, and there's no basis for doing so under our Constitution. And because defendant's sentence is constitutional, we ask the court to reverse the appellate court's judgment and affirm the trial court's sentence. Case number two. Number 1, 2, 3, 9, 7, 2. People's State of Illinois v. William Cody will be taken under advisement. And we thank you for your arguments today, Ms. Kashef and Mr. Malik. Thank you.